AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD R. WILSON, JR., LAURIE WILSON, DRWJ NO. CLEVELAND TRUST, KENNETH S. BRODY, and KSB HENDERSON TRUST, ) ) ) ) | |
| Plaintiffs, ) ) | No. 05 C 3474 |
| v. ) ) | Judge Robert W. Gettleman |
| DEUTSCHE BANK AG; DEUTSCHE BANK SECURITIES, INC., d/b/a Deutsche Bank Alex. Brown, a division of Deutsche Bank Securities, Inc., DAVID PARSE; CRAIG BRUBAKER; BANC ONE INVESTMENT ADVISORS CORPORATION; BANK ONE CORPORATION, n/k/a JP Morgan Chase & Co; AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO; SCOTT DEICHMANN; JEFFREY CONRAD; WHITE & CASE, LLP; JOHN OHLE, III; AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC; and ARTHUR ANDERSON, LLP, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Donald Wilson, Laurie Wilson, DRWJ No. Cleveland Trust, Kenneth Brody, and KSB Henderson Trust filed an eight-count complaint against defendants Deutsche Bank AG ("Deutsche Bank"), Deutsche Bank Securities, Inc. ("DBSI"),[1] David Parse, Craig Brubaker, Banc One Investment Advisors ("Bank One"), American National Bank and Trust of Chicago, Scott Deichmann, Jeffrey Conrad, White & Case LLP, John Ohle III, American Express,

---

[1] Deutsche Bank Securities, Inc. was known formerly as Deutsche Bank Alex. Brown.

American Express Tax and Business Services,[2] and Arthur Andersen LLP in the Circuit Court of Cook County, Illinois. Defendants removed the suit to this court, claiming that it has jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201 et seq., and as a federal question pursuant to 28 U.S.C. §§ 1331 and 1441. Plaintiffs have moved to remand. For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs' eight-count complaint alleges: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (2) breach of contract and the duty of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraud; (5) negligent misrepresentation; (6) breach of contract and professional malpractice; (7) declaratory judgment for IRS penalties and fines; and (8) civil conspiracy. Plaintiffs allege that in connection with the marketing of a tax-advantaged investment strategy ("the Strategy"), defendants induced them to enter into a contract that purported to create a substantial tax savings in exchange for accounting and consulting fees. Plaintiffs contend that defendants induced them into the Strategy even though defendants were aware of IRS notices that challenged the legitimacy and legality of such schemes.

Plaintiffs allege that they met with defendants Ohle, Deichmann, and Conrad at American National Bank[3] to discuss wealth management products in October 2001. Plaintiffs reviewed the materials as well as purported independent opinion letters confirming the legality of the Strategy. In mid-November 2001, defendant Bank One facilitated a teleconference

---

[2] Defendants American Express and American Express Tax and Business Services will be referred to collectively as "American Express."

[3] Defendant Ohle was an employee of American National Bank, and defendants Deichmann and Conrad were employees of Bank One.

between plaintiffs and the "Deutsche Bank Defendants," including defendants Parse and Brubaker,[4] in which those defendants confirmed the legitimacy of the Strategy. Also in November 2001, plaintiffs opened a brokerage account with defendant DBSI to trade German government bond options. The account agreement included an arbitration clause in which plaintiffs agreed to arbitrate any disputes with defendant DBSI or its "affiliates," defined as "Deutsche Bank AG and its affiliates." To implement the Strategy, plaintiffs borrowed substantial funds from Deutsche Bank's London branch. Further, defendants Arthur Anderson and American Express prepared plaintiffs' tax returns and confirmed the legitimacy of the Strategy.

As a result, plaintiffs were investigated and audited by the IRS, and they were assessed substantial penalties and interest. Plaintiffs contend that defendants should have informed them of IRS Notices 1999-59 and 2000-44,[5] which challenged the strategy and were issued before plaintiffs entered the Strategy. Further, plaintiffs allege that defendants failed to disclose the IRS amnesty plan for individuals who engaged in these types of tax shelters. Plaintiffs seek damages allegedly sustained from their participation in defendants' Strategy, along with

---

[4] Parse and Brubaker were employees of Deutsche Bank and/or DBSI.

[5] IRS Notices 1999-59 and 2000-44 challenged the legitimacy of tax shelters such as defendants' Strategy. IRS Notice 1999-59 provides: "Taxpayers and their representatives are alerted that the purported losses arising from certain types of transactions are not properly allowable for federal income tax purposes. Also, the Service may impose penalties on participants on these transactions or, as applicable, on persons who participate in the promotion or reporting of these transactions." IRS Notice 1999-59 further explained that "In on etypical arrangement, taxpayers act through a partnership to contribute cash to a foreign corporation, which has been formed for the purpose of carrying out the transaction, in exchange for the common stock of that corporation. Another party contributes additional capital to the corporation in exchange for the preferred stock of that corporation. The foreign corporation then acquires additional capital by borrowing from a bank and grants the bank a security interest in securities acquired by the foreign corporation that have a value equal to the amount of the borrowing. Thereafter, the foreign corporation makes a distribution of the encumbered securities to the partnership that holds its common stock. The effect of the distribution, combined with fees and other transaction costs incurred at the corporation level, is to reduce the remaining value of the foreign corporation's common stock to zero or a minimal amount. IRS Notice 2000-44 provides: "Taxpayers and their representatives are alerted that the purported losses arising from certain types of transactions are not properly allowable for federal income tax purposes. Also, the Service may impose penalties on participants in these transactions or, as applicable, on persons who participate in promoting or reporting these transactions."

damages based on claims under Illinois state law and a declaration that defendants are liable for any and all penalties and interest assessed by the IRS resulting from plaintiffs' participation in the defendants' Strategy. The underlying bases of all of the claims are the legitimacy of the Strategy and defendants' alleged failure to inform plaintiffs of any adverse consequences for participating in the Strategy.

## DISCUSSION

Whether plaintiffs' claims belong in federal or state court depends on whether their claims fall under the Convention, which would confer federal jurisdiction. 9 U.S.C. § 201 et seq.[6] Congress enacted the Convention to provide U.S. citizens with a predictable means to enforce arbitration provisions in foreign courts. Beiser v. Weyler, 284 F.3d 665, 669 n. 2 (5th Cir. 2002). Convention signatories agreed to enforce contracts by submitting disputes to arbitration and enforcing the arbitrators' judgments. Id. Congress implemented the Convention through 9 U.S.C. §§ 201-208. Id.

Arbitration agreements that "fall under the Convention" are defined in 9 U.S.C. § 202. Generally, the Convention applies when the agreement "arise[s] out of a commercial relationship" and "at least one of the parties to the agreement [is] not . . . a U.S. citizen." 9 U.S.C. § 202 (2005); Beiser, 284 F.3d at 665 n. 2. If the agreement involves only U.S. citizens, the agreement falls under the Convention only if the "relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." U.S.C. § 202 (2005). Congress emphasized this exception criteria by noting that "Section 202 is intended to make it clear that an agreement or award arising out of a legal relationship exclusively between citizens of the United States is not

---

[6] Because the court holds that the Convention applies, this opinion need not address the other bases for federal jurisdiction addressed by defendants.

enforceable under the Convention in U.S. courts unless it has a reasonable relation with a foreign state." 1970 U.S.C.C.A.N. 3601, 3602.

The Convention provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and U.S. district courts "shall have original jurisdiction over such an action or proceeding, regardless of amount in controversy . . ." 9 U.S.C. § 203 (2005). The appropriate venue for an action or proceeding falling under the Convention may be in "any such court in which . . . an action or proceeding with respect to the controversy between the parties could be brought . . ." 9 U.S.C. § 204 (2005). If the arbitrable dispute is pending in a State court, "the [defendant(s)] may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205 (2005).

Defendants contend that removal under the Convention was proper because: (1) plaintiffs' claims arise out of their participation in the tax-advantaged investment Strategy; (2) plaintiffs entered into an agreement with defendants to implement the Strategy; (3) the Strategy involved property located abroad, envisioned performance abroad, and had a relationship to a foreign state; and (4) the subject matter of plaintiffs' claims relates to that agreement. Plaintiffs disagree with all of these points.

For removal to be proper, the parties' relationship must have had a reasonable relation with a foreign state and the arbitration agreement must relate to the dispute. 9 U.S.C. §§ 202, 205 (2005). In applying the Convention to arbitration agreements between U.S. citizens, courts must determine whether there is a reasonable relation between the agreement and a foreign property. Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 340 (5th Cir. 2004)

(Convention applied between U.S. citizen and U.S. corporation where the employment contract called for performance in Nigeria); Lander Company, Inc. v. MMP Investments, Inc., 107 F.3d 476, 481 (7th Cir. 1997) (Convention applied between two U.S. companies where performance of contract took place in Poland); Jones v. Sea Tow Services, Inc., 30 F.3d 360, 366 (2nd Cir. 1994) (Convention did not apply where the only foreign element was the arbitration clause choice of law provision).

In Beiser, 284 F.3d at 669, the Fifth Circuit interpreted the "relates to" language of 9 U.S.C. § 205 broadly, holding that "whenever an arbitration agreement . . . could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." The court concluded that Congress set a low bar for meeting the jurisdictional requirement under § 205, noting that "the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." Id. Additionally, the Beiser court concluded that Congress intended to allow "removal whenever the arbitration clause could conceivably impact the disposition of the case . . . . [E]asy removal is exactly what Congress intended in § 205." Id. at 674.

The Beiser plaintiff was a consultant in the oil industry and his employer's only employee. Id. at 669. The plaintiff signed an agreement with his employer's client, which included an arbitration clause. Id. Although the plaintiff argued that he was not a party to the agreement, the Beiser court concluded that the plaintiff's "suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise," and "the arbitration agreement arises out of a commercial legal relationship between" the parties. Id.

In a number of recent cases involving Deutche Bank strategies similar to the Strategy in the instant case, courts have upheld federal jurisdiction under the Convention following the

broad language of Beiser, concluding that the parties' arbitration agreements related to the dispute. See Hansen v. KPMG LLP, CV 04-10525-GLT at 3 (C.D. Cal March 28, 2005) (the court concluded that the arbitration agreement related to the plaintiffs' claims given the "easy" standard); Chew v. KPMG LLP (S.D. Miss. Jan. 16, 2005), No. 3:04CV748BN at 10-11 (under the broad language of Beiser, the plaintiffs' claims relate to the arbitration agreement); Reddam v. KPMG LLP, No. SA CV 04-1227-GLT at 3 (C.D. Cal. Dec. 15, 2004) (agreement with arbitration clause allowed plaintiffs to implement transactions relevant to their claim).

For example, in Galtney v. KPMG LLP, 2005 WL 1214613 *1,3 (S.D. Tex May 19, 2005), the court found jurisdiction under the Convention, noting that the plaintiffs intended to borrow funds from a foreign bank (Deutsche Bank Cayman Islands), that the letter agreement and customer's agreement were determinative, and the plaintiffs signed an agreement letter that stated that they intended to borrow funds from Deutsche Bank's Cayman Islands branch. Id. at *1-2. See also Keeter v. KPMG LLP, No. 1:04-cv-3759-WSD at 4-5 (Cayman Islands branch of Deutsche Bank made funds available to plaintiffs to implement the strategy); Hansen, No. CV 04-10525-GLT at 4 (plaintiffs borrowed funds from Deutsche Bank in connection with the transaction); Chew, No. 3:04CV748BN at 9-10 (plaintiffs invested in the stock of Deutsche Bank as part of the transaction); Reddam, No. SA CV 04-1227-GLT at 3-4 (plaintiffs opened a trust account with Deutsche Bank to effectuate the strategy).

In the instant case, plaintiffs opened a brokerage account with defendant DBSI to trade German government bond options. The account agreement included a clause requiring plaintiffs "to arbitrate with [defendants] any controversies which may arise . . . only before the New York Stock Exchange or National Association of Securities Dealers Regulation, Inc., at [plaintiffs'] election." To implement the Strategy, plaintiffs borrowed funds from Deutsche Bank's London

branch. The parties' relationship, therefore, involved a foreign element because plaintiffs intended to invest in German bond options and, more importantly, to borrow substantial funds from a foreign bank to implement the strategy. The language of the arbitration clause in the parties' Account Agreements states that "[plaintiffs] agree to arbitrate with [defendants] . . . any controversy arising out of or relating to . . . transactions with or through [defendants]." Because the parties' controversy arises from their commercial relationship, the arbitration clause clearly relates to the controversy. As a result, the court concludes that the arbitration agreement relates to the parties' controversy, and the arbitration agreement falls under the Convention, conferring jurisdiction to the court pursuant to §§ 202 and 205.

Finally, plaintiffs argue that even if the court has jurisdiction under the Convention, the court should exercise its discretion under 28 U.S.C. § 1441(c) to remand the claims against all defendants except the Deutsche Bank defendants because only the Deutsche Bank defendants are parties to the arbitration agreement. Section 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by § 1331 of this Title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates.

Plaintiff's motion is premature. The court has not yet determined which, if any, of the defendants can enforce the arbitration agreement, and thus cannot yet determine whether the claims against the Deutsche Bank defendants are separate and independent from the claims against the other defendants. Therefore, plaintiff's motion to remand under Section 1441(c) is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is denied. This matter is set for a report on status December 8, 2005, at 9:00 a.m.

ENTER:   November 30, 2005

_____
Robert W. Gettleman
United States District Judge